**NOT FOR PUBLICATION**                                                      **CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                                      :
HECTOR PROANO,                                        :
                                                      :
                            Plaintiff,                :
            v.                                        :        CIVIL ACTION NO. 05-2752 (JAP)
                                                      :
COMMISSIONER OF SOCIAL                                :
SECURITY,                                             :        **OPINION**
                            Defendant.                :
_____:


APPEARANCES:

Abraham S. Alter, Esq.
Langton & Alter
2096 St. Georges Avenue
Rahway, NJ 07065
        *Attorneys for Plaintiff*



Christopher J. Christie, Esq.
United States Attorney
Sheena V. Barr, Esq.
Special Assistant United States Attorney
Office of the United States Attorney
Social Security Administration
26 Federal Plaza
Room 3904
New York, NY 10278
        Attorneys for Defendant

PISANO, District Judge:

Before the Court is Hector Proano's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying his request for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits.  The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3) and decides this matter without oral argument, *see* Fed R. Civ. P. 78.  The record provides substantial evidence supporting the ALJ's decision that Plaintiff was not disabled.  Accordingly, the Court affirms.

## I.     Background

### A.     Procedural History

Plaintiff filed an application for benefits on April 1, 2002, alleging an inability to work since October 1, 2001.  The Social Security Administration ("SSA") denied Plaintiff's claim initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on February 9, 2004, and the ALJ issued his decision on March 5, 2004, finding that Plaintiff was not disabled within the meaning of the Social Security Act.  Plaintiff then filed an appeal of the ALJ's decision with the Social Security Appeals Council ("Appeals Council").  The Appeals Council denied the appeal on March 25, 2005, making the ALJ's decision the Commissioner's final decision on the issue of Plaintiff's request for benefits.

### B.     Factual History

Plaintiff was born in Ecuador on June 19, 1966.  He presently lives in Jersey City, New Jersey with his wife and two children. He has a twelfth grade education that he obtained before

2

he came to the United States.  At the time of his hearing before the ALJ, Plaintiff had been in the

United States for 18 years.  His native language is Spanish, and he testified that he speaks a little

bit of English.

Plaintiff testified that his typical day included cleaning a little around his house, watching

TV, cooking, and lying down in bed.  He sometimes spent part of the day sleeping, but explained

that other times could not sleep even at night due to depression and his medications.  He took

various medicines, including OxyContin, Zoloft, Oxycodone, Pleura and Endocet.  He stated that

he could lift between five and ten pounds, but not all the time.  He also testified that he feels very

uncomfortable after sitting uninterrupted for more than 15 minutes to a half hour and feels pain

after walking more than ten minutes.  Plaintiff reported that he sees his treating physician, Dr.

Monica Mehta, on a weekly basis, and goes to physical therapy every week.  He had monthly

injections in his neck and back.

Plaintiff's past work experience includes employment as an asbestos remover,

picker/packer, and truck driver. Plaintiff asserts that he became disabled on October 1, 2001 due

to orthopedic disorders, cardiovascular disorders and depression.

Plaintiff's medical records indicate that he presented to the emergency room of Greenville

Hospital complaining of left-sides chest pain associated with numbness and pain in his left arm

on March 8, 2000.  He was found with stable medical signs.  The hospital report indicates that he

had minimum electrocardiogram changes.  Plaintiff reported that he had a history of

hypercholesterolemia, for which he was on a special low cholesterol diet, but took no medication

for.  He stated that he used to stopped smoking about six months earlier.  He also reported that he

played volleyball and soccer in a vigorous way without any chest pain or shortness in breath.  He

reported that he was in a motor vehicle accident in 1995 at which time he fractured his left femur.

During the course of his hospitalization, Plaintiff was treated with nitrates and subsequently became pain and symptom free.  He had no orthopnea, paroxysmal nocturnal dyspnea or nocturia.  Nor did he have leg edema, palpitations, dizziness or loss of consciousness.  His chest x-ray was normal and a physical examination was essentially within normal limits.  He was discharged on March 10, 2000 with a diagnosis of chest pain and history of hypercholesterolemia.  He was instructed to stay on a low fat diet and to follow up as an outpatient.

On June 5, 2002, Dr. Humberto Perez, examining physician for the State of New Jersey Department of Human Services completed a report regarding Plaintiff's medical condition. On Plaintiff's musculoskeletal evaluation, Dr. Perez reported the absence of any defects, deformities, or impairments relating to Plaintiff's neck, back or extremity.  Regarding Plaintiff's cardiovascular respiratory system, Dr. Perez reported no dyspnea, congestive heart failure, high blood pressure or symptoms relating to a cardiovascular impairment.  Neurologically, Dr. Perez reported that Plaintiff did not have any sensory deficits or atrophy in any part of his body, but did have weakness in his leg.  Dr. Perez reported that on psychiatric evaluation, Plaintiff was oriented and had not lost any control of his mental faculties.  Dr. Perez did, however, report that Plaintiff had psychosis.

In the medical summary portion of Dr. Perez's report, he listed Plaintiff's major diagnosis as low back pain, chest pain, and psychosis.  He indicated that Plaintiff's injuries were due to his employment, and he characterized Plaintiff's impairments as progressive.  Dr. Perez listed limitations in standing, walking, climbing, stooping, bending and lifting, as well as psychological

limitations.  He noted that Plaintiff was ambulatory and recommended physical therapy.  Dr.

Perez reported that Plaintiff could not work full time, that his impairment lasted more than 12

months, and that he was totally disabled.

On August 13, 2002, Dr. Alan Friedman conducted an orthopedic consultative

examination on Plaintiff at the request of the Disability Determination Services (DDS).

According to Dr. Friedman's report, Plaintiff injured his neck and his back as a result of his

motor vehicle accident in 1995 and was diagnosed at some point with herniated discs in his neck

and cervical and lumber spine.  Plaintiff brought an MRI of the cervical spine dated March 2002

to the examination, which showed a herniated disc.  Plaintiff indicated low back pain without a

clear radiation pattern, which increased with sitting and bending.  His neck pain radiated to both

upper extremities but was not associated with sensory changes.  Dr. Friedman reported that

Plaintiff was able to ascend and descent the exam table as well as don and doff his shoes and

socks independently.  His gait was heel-to-toe, and he was able to squat and to walk on his toes

and heels.

Dr. Friedman reported that Plaintiff's fine and gross motor coordination were normal and

that his joints were without erythema, effusion, dislocations or deformities.  No atrophy was

noted, and he has full range of motion of his shoulders, elbows, wrists, knees, hips, and ankles

bilaterally as well as at the cervical and lumbar spine.  Dr. Friedman's impression was cervical

radiculopathy with possible myelopathy.  He opined that this gave Plaintiff decreased sensation

in the proximal upper extremities, although there was no clear weakness.  According to Dr.

Friedman, Plaintiff also had a lumbar radiculopathy in the right hand at the L-5 levels.  Dr.

Friedman opined that this would make it hard, if not impossible, for Plaintiff to perform the

activities of a truck driver, as well as uncomfortable to perform most activities in both sitting and standing positions.

On September 16, 2002, Dr. Elias Fernandez performed a mental status examination on the Plaintiff at the request of DDS. Plaintiff described his chief complaint to Dr. Fernandez as "two hernias, a lot of stress." Plaintiff explained that he had one past visit to psychiatrist but had no insurance to pay for treatment. He reported no psychiatric hospitalizations. He told Dr. Fernandez that he stopped working because of back pain and emotional depression. He reported that the onset of his problems occurred two years prior, after he had numbness in his left arm from a pinched nerve. Plaintiff reported that he feels sad and depressed, and that he has emotional difficulty because of his economic problems and medical problems and not being able to achieve his goals. After conducting the mental status examination on Plaintiff, Dr. Fernandez concluded that Plaintiff exhibited affective problems of low grade chronic depression as well as anxiety symptoms. Dr. Fernandez stated that individuals with similar problems often benefitted from pharmacotherapy as well as cognitive behavioral therapy.

A narrative report from Plaintiff's treating physician, Dr. Monica Mehta, dated February 10, 2003, indicates that Plaintiff had been her patient since August 6, 2001, when he came to her office with chief complaints of neck pain going down to both upper extremities and back pain going back down to both lower extremities. Dr. Mehta reported that electromyographic studies revealed the presence of C5-6 and an L5-S1 radiculopathy, and that MRI studies of the cervical spine revealed the presence of a central disk protrusion at the C6-7 level. MRI studies of the lumbar spine revealed the presence of a disk bulge at the L5-SI level with degenerative disk changes. Dr. Mehta reported that Plaintiff started to have complaints of chest pain and therefore,

an emergency EKG revealed the presence of sinus bradycardia.   Dr. Mehta opined that

Plaintiff's persistent complaints of pain in the neck and back were due to the acute cervical and

lumbosacral radiculopathy and cervical and lumbar disk bulges with degenerative changes to the

cervical spine and the lumbosacral spine as had been evidenced with electromyographic studies

and MRI studies respectively.   Dr. Mehta opined that Plaintiff was totally disabled from any

gainful employment.

## II.    <u>Standard of Review</u>

A reviewing court must uphold the Commissioner's factual decisions if they are

supported by "substantial evidence." 42 U.S.C. § 405(g); § 1383(c)(3) ("The final determination

of the Commissioner of Social Security. . . shall be subject to judicial review as provided in

section 405(g) . . ."); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).  "Substantial

evidence" means more than "a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.  The

inquiry is not whether the reviewing court would have made the same determination, but rather

whether the Commissioner's conclusion was reasonable.  *Brown v. Bowen*, 845 F.2d 1211, 1213

(3d Cir.  1988).  Thus, substantial evidence may be slightly less than a preponderance. *Stunkard*

*v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir.  1988).

Some types of evidence will not be "substantial."  For example,

'[a] single piece of evidence will not satisfy the substantiality test if the
[Commissioner] ignores, or fails to resolve, a conflict created by
countervailing evidence.  Nor is evidence substantial if it is overwhelmed by
other evidence - particularly certain types of evidence (e.g. that offered by
treating physicians) - or if it really constitutes not evidence but mere

conclusion.'

*Wallace v.  Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

The reviewing court must review the evidence in its totality.  *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).  In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.'" *Schonewolf v. Callahan*, 9723 F. Supp. 277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir.1988) (internal citation omitted)).  The Commissioner has a corresponding duty to facilitate the court's review:  "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa.  1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)).  As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v.  Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)).  Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182.

## A.    The Record Must Provide Objective Medical Evidence

Under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* and 42 U.S.C.

§ 1381 *et seq.*, a claimant is required to provide objective medical evidence in order to prove her disability.  42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless she furnishes such medical and other evidence of the existence thereof as the Secretary may require."); 42 U.S.C. § 1382c(H)(i) ("In making determinations with respect to disability under this subchapter, the provisions of sections. . . 42 U.S.C. § 423(d)(5)(A) of this title shall apply in the same manner as they apply to determinations of disability under subchapter II of this chapter.").

Accordingly, a Plaintiff cannot prove that he is disabled based solely on his subjective complaints of pain and other symptoms.  *See Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) (emphasizing that "subjective complaints of pain, without more, do not in themselves *constitute* disability.")  He must provide medical findings that show that he has a medically determinable impairment of such severity that he is unable to engage in any substantial gainful activity.  *See id.; see also* 42 U.S.C. § 423(d)(1)(A) (defining a disabled person as one who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ."); 42 U.S.C. § 1382c(a)(3)(A) (same).

Furthermore, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless "medical signs" or laboratory findings show that a medically determinable impairment(s) is present."  20 C.F.R. § 404.1529(b); *see Hartranft v.  Apfel*, 181 F.3d 358, 362 (3d Cir.  1999) (rejecting claimant's argument that the ALJ failed to consider his subjective symptoms where the ALJ made findings that complaints of pain and symptoms were inconsistent with objective medical evidence and claimant's hearing testimony); *Williams*, 970 F.2d at 1186

9

(denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work).

**B.**     <u>**The Five-Step Analysis for Determining Disability**</u>

Social Security Regulations provide a five-step sequential analysis for evaluating whether a disability exists.  *See* 20 C.F.R. § 20 C.F.R. §§ 404.1520, 416.920.[1]  For the first two steps, the claimant must establish (1) that he has not engaged in "substantial gainful activity" since the onset of his alleged disability, and (2) that he suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. §§ 404.1520(a)-(c), 416.920(a)-(c).  Given that a claimant bears the burden of establishing these first two requirements, the failure to meet this burden automatically results in a denial of benefits.  *See Bowen v.  Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).

If the claimant satisfies his initial burdens, the third step requires that he provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix  1 of the Code of Federal Regulations ("Listing of Impairments").  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).  Upon such a showing, he is presumed to be disabled and is automatically entitled to disability benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If he cannot so demonstrate, the benefit eligibility analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's "residual functional capacity" sufficiently permits him to resume his previous employment.  *See* 20 C.F.R. §§

---

[1]  The regulations implementing the standard for obtaining disability insurance benefits, 42 U.S.C. § 401 *et seq.*, and those implementing the standard for supplemental security income, 42 U.S.C. § 1381 *et seq.* are the same in all relevant respects.  *See Sullivan  v. Zebley*, 493 U.S. 521, 526 n.3 (1990).

404.1520(e), 416.920(e).  "Residual functional capacity" is defined as "that which an individual

is still able to do despite limitations caused by his or her impairments."  20 C.F.R. §§

404.1520(e), 416.920(e).  If the claimant is found to be capable of returning to his previous line

of work, then he is not "disabled" and not entitled to disability benefits.  20 C.F.R. §§

404.1520(e), 416.920(e).  Should the claimant be unable to return to his previous work, the

analysis proceeds to step five.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can

perform other substantial gainful work in the national economy, considering his residual

functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(f),

416.920(f).  The Dictionary of Occupational Titles classifies the different levels of physical

exertion, namely, sedentary, light, medium, heavy, and very heavy, that could be associated with

a job.  *See* 20 C.F.R. §§ 404.1567, 416.967.  If the Commissioner cannot satisfy the burden, the

claimant shall receive social security benefits.  *Yuckert,* 482 U.S. at 146-47 n.5.

Prior to 1978, vocational experts were used to determine whether there were suitable jobs

in the national economy that the claimant could perform.  *See, e.g., Sykes v. Apfel*, 228 F.3d 259,

263 (3d Cir. 2000); *see also Cartenega v. Comm'r of Social Security*, No. 01-2812, 29 Fed.

Appx. 883, 2002 WL 334115, at *1 (3d Cir. Feb. 28, 2002).  However, in 1978, the Secretary of

Health and Human Services promulgated the Medical-Vocational Guidelines, 20 C.F.R., Part

404, Subpart P, Appendix 2,  also termed "grids," to aid administrative law judges and

ultimately, the Commissioner, in determining whether suitable jobs exist in the national economy

for claimants with exertional impairments.[2]  *See, e.g.*, *Sykes*, 228 F.3d at 263; *see also*

*Cartenega*, 2002 WL 334115, at *1.  These grids establish the types and numbers of jobs in the

national economy that exist for claimants with exertional impairments.  *See Sykes*, 228 F.3d at

263.  When a claimant with exertional impairments fits into a specific category based on the

person's residual functional capacity, age, education, and work experience, the grids direct a

conclusion that there is work in the national economy that the claimant can perform.  *See id.*

     However, where a claimant has both exertional and non-exertional impairments, the grids

do not account for the erosion of the applicable occupational base[3] in light of the non-exertional

limitations.  *See, e.g.*, *Sykes*, 228 F.3d at 269-70; *see also Cartenega*, 2002 WL 334115, at *2.

Thus, in such circumstances, the ALJ must rely on the testimony of a vocational expert or other

additional evidence to determine the effects of the claimant's non-exertional impairments.  *See,*

*e.g.*, *Sykes*, 228 F.3d at 273.

### III.   <u>The ALJ's Decision</u>

     After reviewing the available evidence and considering Plaintiff's testimony, the ALJ

concluded that Plaintiff was not disabled.  The ALJ made the following findings:

---

[2]  Exertional impairments are those that affect the ability to meet the strength demands of
a particular job, such as sitting, standing and carrying.  Non-exertional impairments are
limitations other than strength demands, such as difficulty functioning due to mental illness,
difficulty seeing or hearing, and difficulty concentrating.  *See, e.g.*, 20 C.F.R. §§ 404.1569a(a)-
(c); 416.969a(a)-(c); *Cartenega v. Comm'r of Social Security*, No. 01-2812, 29 Fed. Appx. 883,
2002 WL 334115, at *2 (3d Cir. Feb. 28, 2002).

[3]  The Plaintiff's occupational base is " 'the number of occupations, as represented by
[residual functional capacity], that an individual is capable of performing.' " *Santiago v.
Barnhart*, 367 F. Supp. 2d 728, 735 n.7 (E.D. Pa. 2005) (quoting S.S.R. 83-10, 1983 WL 31251,
at *7 (1983)).

A.      **Steps One, Two, and Three**

The ALJ determined that Plaintiff met step one of the analysis because he had not engaged in substantial gainful activity since the alleged onset of his disability.  Next, the ALJ had to determine whether any of Plaintiff's ailments were "severe".  The ALJ found that Plaintiff had lumbar and cervical radiculopathy, impairments that were severe within the meaning of the regulations.  The ALJ concluded, however, that these impairments were not severe enough to meet or medically equal any of the impairments documented in the Listing of Impairments.  Additionally, the ALJ determined that Plaintiff's depression and anxiety with panic attacks were not severe impairments.  Therefore, Plaintiff was not automatically entitled to disability benefits.

B.      **Step Four**

The ALJ proceeded to step four of the analysis, which focuses on whether the claimant's residual functional capacity sufficiently permits him to resume his previous employment. As indicated above, if the claimant is found to be capable of returning to her previous type of work, then he is not "disabled" and therefore not entitled to disability benefits.  A comparison between the claimant's residual functional capacity and the requirements of his past relevant work is necessary to satisfy step four.  *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *Burnett v. Comm'r of Social Security Administration*, 220 F.3d 112, 120 (3d Cir. 2000).

The ALJ determined that based on the evidence of record, Plaintiff retained the residual functional capacity to perform light and sedentary work.   In making this determination, the ALJ found that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, and stand and/or walk for up to 6 hours in an 9 hour workday with some occasional postural

limitations. Given this residual functional capacity, the ALJ concluded that Plaintiff was unable to return to his past relevant work which required heavy lifting.

**C.**   **Step Five**

After taking into consideration Plaintiff's age, residual functional capacity, education, and work experience, the ALJ determined that Plaintiff could perform other occupations in the national economy and thus, was not disabled.  In this regard, the ALJ specifically noted that Plaintiff was a younger individual (37 years old as of the date of the ALJ's decision) with a high school education and transferable skills from semi-skilled work that he had previously performed.  Applying Medical-Vocational Rule 202.17 and 201.25, the ALJ concluded that Plaintiff could perform jobs in the national economy and thus, that Plaintiff was not disabled.

**IV.**   **Legal Discussion**

Plaintiff now raises the following arguments challenging the ALJ's decision:

1.   The ALJ rejected the opinion of Plaintiff's treating physician without contradictory medical evidence;

2.   The ALJ offered no articulated basis for his RFC assessment;

3.   The ALJ did not observe the Commissioner's mandated pain protocol;

4.   The ALJ was unqualified to determine that Plaintiff's psychiatric impairment was not severe; and

5.   The ALJ inappropriately utilized the grids to direct a finding of non-disability.

The Commissioner contends that the ALJ's decision is supported by substantial evidence and therefore should be affirmed.  The Court will address each argument in turn.

14

A.      **Plaintiff's Treating Physician**

Plaintiff first argues that the ALJ rejected the opinion of his treating physician, Dr. Mehta, without explanation and without contradictory evidence.  The Court disagrees, and finds that the ALJ did provide an explanation for rejecting Dr. Mehta's conclusion that Plaintiff was "totally disabled" and also did cite contradictory evidence.

First, although Dr. Mehta indicated that Plaintiff was unable to perform any work activity, the decision regarding whether an individual is disabled or unable to work under the Act is an opinion reserved to the Commissioner.  20 C.F.R. § 416.927(e)(1).  Thus, although the diagnosis of a treating physician is considered as to whether a claimant is "disabled," the ALJ has the final responsibility to determine a claimant's residual functional capacity to perform past relevant work.  20 C.F.R. § 404.1527 (e)(2).

The ALJ recognized that Dr. Mehta opined that Plaintiff was disabled, but pointed out that this assessment was not supported by her office notes, treatment recommendations, or diagnostic testings.  Furthermore, the ALJ explained that other evidence contradicted Dr. Mehta's opinion.  For example, the ALJ had cited Dr. Friedman's report, which indicated that Plaintiff's joints were without erythema, effusion, dislocations, or deformities.  Additionally, no atrophy was noted and Plaintiff's strength was graded 5/5 bilaterally in the upper and lower extremities.  Dr. Friedman also noted that Plaintiff had full range of motion his shoulders, elbows, wrists, knees, hips, and ankles bilaterally, as well as the cervical and lumbar spine.

Consequently, the Court finds that the ALJ properly analyzed why he did not give Dr. Mehta's opinion greater weight than the other medical evidence.

B.      **Residual Functional Capacity Assessment**

15

Plaintiff argues that the ALJ offered no articulated basis for his RFC assessment.  The ALJ found that Plaintiff retained the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, and to stand and/or walk for up to six hours in an eight-hour workday with some occasional postural limitations.  Contrary to Plaintiff's assertions, the ALJ's did offer an articulated basis for his RFC assessment, and the ALJ's discussion and analysis in this regard were sufficient and permits meaningful judicial review.  *Burnett*, 220 F.3d at 119-20; *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).   In his analysis, the ALJ stated which evidence he gave particular weight to and which he discounted, and explained his reasons. For example, the ALJ explained that the consultative examinations led to the conclusion that the assessment of the Commissioner's Medical Expert accurately reflected the Plaintiff's condition. He also explained that he did not give Plaintiff's treating physician's opinion that Plaintiff was totally disabled any great weight because it was not supported by office notes, treatment recommendations or diagnostic testings.  The ALJ "does not need to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.  Thus, the Court finds, based on the medical evidence, that the ALJ's RFC finding that Plaintiff retained the residual functional capacity to perform a full range of light and sedentary work is supported by the substantial evidence.

**C.**   **Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ failed to properly evaluate the medical evidence by failing to give credence to Plaintiff's subjective complaints.  In his decision, the ALJ explained that he found that Plaintiff's allegations regarding his limitations were not totally credible.  As discussed above, 20 C.F.R. § 404.1529 requires that the objective medical evidence demonstrate a basis for

16

subjective complaints.  Complaints about pain or other symptoms alone will not establish that a claimant is disabled.  *See* 20 C.F.R. § 404.1529(a).  Rather, these complaints must be coupled with objective medical signs and laboratory findings that demonstrate a medical impairment that could reasonably produce the alleged subjective complaints.  *See id.*

The Court finds that the ALJ's evaluation of Plaintiff's subjective complaints of pain was proper and supported by substantial evidence.  *See* 20 C.F.R. 404.1529(c).

First, the ALJ noted that although Plaintiff reported injuring his back, neg, and legs in a motor vehicle accident in 1995, he was able to continue working until February 2002.  The ALJ opined that such complaints could not reasonably be accepted as consistent with objective medical evidence, including medical signs and laboratory findings, medical reports and daily activities.  The ALJ also noted that the conservative nature of the Plaintiff's treatment indicated that his condition was not of debilitating magnitude.  The ALJ stated that Plaintiff was never hospitalized for his back condition, and there was no indication that he has ever required ongoing potent pain medications.  The ALJ also pointed out that the recent physical examination by Dr. Friedman was relatively benign, and showed no deformity of the spine and normal gait.  Finally, the ALJ noted that Plaintiff was able to drive, cook, perform household chores, utilize public transportation independently, and care for his children.

Consequently, the ALJ reasonably concluded that Plaintiff's subjective complaints of pain were not credible.  Plaintiff's argument that the ALJ did not observe the Commissioner's mandated pain protocol is unfounded, and the Court finds no reason to reverse the decision.

**D.**   **Plaintiff's Mental Impairment**

Plaintiff next argues that the ALJ incorrectly determined that his mental impairment was not severe.  He contends that Dr. Perez reported that he suffered from "psychosis and depression," and that Dr. Fernandez reported that he suffered a dysthmic disorder, a major depressive disorder, and anxiety disorder and a panic disorder without agoraphobia, in remission. The Court finds, however, that substantial evidence supports the ALJ's decision that Plaintiff's mental impairments were not severe.  First, the ALJ noted that Plaintiff never pursued any manner of psychiatric or psychological treatment, and was not receiving treatment by a mental health provider.  The ALJ also explained that Plaintiff's treating physician, Dr. Mehta, did not make any reference that Plaintiff suffered from depression.  Further, the ALJ noted that Dr. Perez's statement that Plaintiff suffered from psychosis was inconsistent with Dr. Fernandez's findings upon conducing a mental examination of Plaintiff.  According to Dr. Fernandez's report, Plaintiff's orientation was intact, he had no cognitive deficits, he gave accurate calculations, and his responses to questions were relevant and logical.  The ALJ also explained that there were no cognitive or mood problems reported in the records of any of the physicians who examined the Plaintiff.  The ALJ concluded that in the absence of treatment and in the absence of any post hearing evidence, Plaintiff's mental impairments were not severe.  The Court is satisfied that the ALJ conducted an appropriate analysis here.

**E.**    **Application of the Medical-Vocational Guidelines**

Finally, Plaintiff argues that the ALJ inappropriately utilized the vocational rules to direct a finding that Plaintiff was not disabled.  Specifically, Plaintiff claims that the Commissioner erred in mechanically relying on the Medical-Vocational Guidelines, or "grids," to reach an unfavorable decision in his case.  Plaintiff asserts that because he suffers from non-exertional

impairments,  the ALJ was required to consult a vocational expert before determining that he was not disabled.  The Court disagrees.

In rendering his decision, the ALJ explicitly found that Plaintiff did not suffer from any significant non-exertional limitations that diminished his residual functional capacity.  This finding was supported by substantial evidence.  Although the ALJ noted that Plaintiff had some occasional postural limitations, he concluded that those limitations did not compromise Plaintiff's ability to perform the full range of light and sedentary work.  Further, the ALJ found that based on the objective medical evidence available, Plaintiff's mental impairments were not severe.  Thus, the ALJ's determination that Plaintiff had no significant non-exertional limitations, and subsequent mechanical application of the Medical-Vocational Guidelines was proper.  The ALJ was not required to consult a vocational expert.   *See Caruso v. Comm'r of Social Security*, No. 03-2709, 99 Fed. Appx. 376, 2004 WL 1147065, at *4 (3d Cir. May 19, 2004) (rejecting Plaintiff's argument that the ALJ improperly relied on the guidelines where the objective medical evidence and claimant's own testimony did not support her alleged non-exertional impairments); *Cartenega*, 2002 WL 334115, at *2 (holding that ALJ's application of the guidelines without consulting vocational expert was reasonable where the objective medical evidence failed to support Plaintiff's non-exertional limitations).

**V.      Conclusion**

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's decision denying Plaintiff's request for DIB and SSI and thus, the Commissioner's ultimate decision is affirmed.  An appropriate order accompanies this opinion.

Dated: March 28, 2007

s/ Joel A. Pisano
JOEL A. PISANO U.S.D.J.

Orig:  Clerk
cc:    All parties
       File

20